**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **ANTHONY LEWIS,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**TWENTY-FIRST CENTURY BEAN PROCESSING,**<br><br>**Defendant.** | **Case No. 2:15-cv-02322-JAR-TJJ** |

**MEMORANDUM AND ORDER**

Plaintiff Anthony Lewis, proceeding *pro se*, filed this case on February 4, 2015, alleging claims of discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"),[1] and Title VII of the Civil Rights Act of 1964[2] against his former employer, Twenty-First Century Bean Processing ("TCBP"). This case is before the Court on Defendant's Motion for Summary Judgment (Doc. 10). The motion is fully briefed and the Court is prepared to rule. As explained more fully below, the Court grants Defendant's motion for summary judgment.

## I. Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[3] In applying this standard, the court views the evidence and all reasonable inferences therefrom in

[1] 29 U.S.C. §§ 621–634.

[2] 42 U.S.C. §§ 2000e–2000e-17.

[3] Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008).

the light most favorable to the nonmoving party.[4] "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[5] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[6] An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."[7]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[8] In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence regarding an essential element of the other party's claim.[9]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[10] The nonmoving party

---

[4]*City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[5]*Bones v. Honeywell, Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[6]*Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 2004)).

[7]*Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (internal quotations omitted).

[8]*Spaulding v. United Trasp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[9]*Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2002) (citing *Adler*, 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

[10]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

may not simply rest upon its pleadings to satisfy its burden.[11] Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[12]

The facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[13] Rule 56(c)(4) provides that opposing affidavits must be made on personal knowledge and shall set forth such facts as would be admissible in evidence.[14] The nonmoving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.[15]

Finally, summary judgment is not a "disfavored procedural shortcut;" on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[16] In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[17]

---

[11]*Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[12]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671); *see Kannady*, 590 F.3d at 1169.

[13]*Adams*, 233 F.3d at 1246.

[14]Fed. R. Civ. P. 56(c)(4).

[15]Fed. R. Civ. P. 56(c)(1); *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citation omitted); *see also Celotex*, 477 U.S. at 323–24 ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses").

[16]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[17]*Conway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

Because Plaintiff is *pro se*, some additional considerations frame the Court's analysis.[18] The court must construe his pleadings liberally and apply a less stringent standard than that which is applicable to attorneys.[19] However, the court may not provide additional factual allegations "to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[20] Additionally, a *pro se* litigant is not excused from complying with the rules of the court and is subject to the consequences of noncompliance.[21]

**II. Uncontroverted Facts**

While the Court construes Plaintiff's briefs liberally, the Court must deem admitted those facts to which Plaintiff wholly failed to respond or otherwise controvert with record evidence that could be presented in an admissible form at trial.[22] Moreover, to the extent Plaintiff purports to controvert facts without specifically citing to appropriate factual material in the record, those facts will be deemed admitted as well.

The following material facts are uncontroverted, stipulated to for the purposes of summary judgment, or viewed in the light most favorable to Plaintiff. Plaintiff Anthony Lewis, is a forty-eight-year-old African American male and a former employee of TCBP. Plaintiff applied for a job with Defendant on or about July 15, 2014. He interviewed with Director of

---

[18]Plaintiff Anthony Lewis is, however, no stranger to the litigation process. He has been a plaintiff in twenty other cases in this court alone. On July 23, 2013, in dismissing a claim on the grounds that it was frivolous or malicious, Judge Belot directed the clerk's office to not file any Lewis case assigned to him without court review and authorization.

[19]*Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).

[20]*Id.*

[21]*Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994) (insisting that *pro se* litigants follow procedural rules and citing various cases dismissing *pro se* cases for failure to comply with the rules) (citing *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)).

[22]Fed. R. Civ. P. 56(e)(2); *See* D. Kan. R. 56.1(a) & (b)(1).

Operations Ron Meyers, who asked General Manager Stacy Masters to join the interview. Masters decided to hire Plaintiff to work at a warehouse in Sharon Springs, Kansas, subject to a thirty-day probationary period. He was informed at the time of hiring that at the end of the probationary period, he would be evaluated to determine whether he would remain an employee.

Defendant has a written policy regarding employee conduct, which informs employees that unacceptable behavior may result in disciplinary action including termination.[23] The policy requires regular and punctual attendance.[24] During the probationary period, Plaintiff was absent from work four out of twenty-five work days.[25] He was also found sleeping on two occasions, and was observed on more than one occasion texting and talking on a personal cellphone. During the probationary period, supervisors warned Plaintiff about both sleeping and cellphone use. He responded to the latter warning argumentatively.[26] For the above reasons, Masters decided to terminate Plaintiff's employment on August 25, 2014, approximately three days after the probationary period came to a close.[27] Matias Martinez, who was older than Plaintiff, filled the position vacated by Plaintiff.[28]

---

[23]Doc. 11-3, Ex. C.

[24]*Id.*

[25]Doc. 11-1, Ex. A ¶ 7. Plaintiff purports to controvert this fact by stating that his work schedule was Monday through Thursday, 7 a.m. to 5 p.m., with occasional overtime work on Fridays. He contends that before his hiring he told Defendant that he had three previously scheduled events in August that would require him to miss work and that the fourth day missed was a Friday, which was not usually a work day, and that Defendant had failed to tell him that he was expected to be at work. But Plaintiff does not cite to an affidavit or any other factual material in the record to support this effort. The Court must therefore deem his absenteeism an uncontroverted fact.

[26]*Id.* ¶ 8–9.

[27]*Id.* ¶ 10.

[28]Defendant offers a Kansas ID Card as evidence of the age of Plaintiff's replacement. Doc. 11-5, Ex. E. Although the exact date of birth is redacted, the digits "63" remain visible and obviously refer to the year 1963. *Id.* Plaintiff was born in 1967. Doc. 1 at 3.

## III. Discussion

### A. *McDonnell Douglas* Framework

Plaintiff presents no direct evidence of discrimination and relies on circumstantial evidence to support his claims. When a plaintiff brings charges of discrimination but provides no direct evidence of such discrimination, a motion for summary judgment must be decided under the *McDonnell Douglas v. Green* burden-shifting framework.[29] Under *McDonnell Douglas*, the plaintiff initially bears the burden of production to establish a prima facie case of discrimination or retaliation.[30] The burden of establishing the prima facie case is "not onerous."[31] If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a facially nondiscriminatory reason for its actions.[32] If the defendant articulates a legitimate nondiscriminatory reason, the burden returns to the plaintiff to present evidence from which a jury might conclude that the defendant's proffered reason is pretextual, that is, "unworthy of belief."[33] Despite the shifting framework, the ultimate burden of persuasion remains with the plaintiff.[34]

### B. Age Discrimination

Defendant argues that it is entitled to summary judgment on Plaintiff's ADEA claim

---

[29]411 U.S. 792, 802–05 (1973); *see, e.g.*, *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011).

[30]411 U.S. at 802.

[31]*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

[32]*Id.*; *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1113 (10th Cir. 2007).

[33]*Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1165 (10th Cir. 1998) (quoting *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995)).

[34]*Richardson v. Blue Cross/Blue Shield of Kan., Inc.*, 196 F. Supp. 2d 1174, 1181 (D. Kan. 2002).

because Plaintiff has failed to establish a prima facie case of age discrimination. Defendant cites *Rivera v. City and County of Denver*, a 2004 case, to support its contention that the elements of a prima facie case of age discrimination are: (1) the plaintiff is within the protected age group; (2) he was doing satisfactory work; (3) he was discharged; and (4) his position was filled by a younger person.[35] Defendant argues that Plaintiff has failed to establish the fourth element, that he was replaced by someone younger.

In the Tenth Circuit, the elements of the prima facie case of age discrimination vary based on the alleged kind of discrimination and the type of adverse employment action.[36] At its most basic, proving an age discrimination claim under the ADEA requires a plaintiff to show that an employer either refused to hire or discharged plaintiff "*because of* such individual's age."[37] Thus, age must be the *reason* the employer took the adverse action.[38] However, for the purposes of establishing a prima facie case under *McDonnell Douglas*, the Tenth Circuit jurisprudence has not been "entirely consistent."[39]

---

[35] 365 F.3d 912, 920 (10th Cir. 2004).

[36] *See e.g.*, *Bittel v. Pfizer, Inc.*, 307 F. App'x 132, 137 (10th Cir. 2009) ("due to the wide range of forms discrimination can take in the employment context, the precise elements of a prima facie case vary from one setting to the next.") (citing *Burdine*, 450 U.S. at 253); *see also Velasquez v. Philips Elecs. N. Am. Corp.*, No. 13-1463-DDC-KMH, 2015 WL 505628 (D. Kan. Feb. 6, 2015) (discussing several different standards used in the Tenth Circuit to establish a prima facie case under the ADEA).

[37] 29 U.S.C. § 623(a)(1) (emphasis added).

[38] *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009).

[39] *Sorbo v. United Parcel Serv., Inc.*, 432 F.3d 1169, 1173 & n.4 (10th Cir. 2005) (discussing an older version of the prima facie case standard with "limited, if indeed any, remaining application in this circuit"); *see also Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1307 n.1 (10th Cir. 2005) (discussing the prima facie case in a disparate treatment claim under Title VII and noting that "our cases have sometimes articulated the prima facie case differently"); *compare Kosak v. Catholic Health Initiatives of Colo.*, 400 F. App'x 363, 366 (10th Cir. 2010) ("[w]e have repeatedly emphasized that an ADEA plaintiff must ordinarily show that her position was filled by a younger person in order to make a prima facie case of discrimination under the *McDonnell Douglas* burden shifting framework"), *with Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1279 (10th Cir. 2010) (analyzing a prima facie case with a fourth element that plaintiff "was treated less favorably than others not in the protected class"), *and*

The Supreme Court provided some guidance as to an age discrimination prima facie case in *O'Connor v. Consolidated Coin Caterers Corporation*, where a fifty-six-year-old was replaced by a forty-year-old.[40] There, the Court overturned the Fourth Circuit's decision upholding a ruling that the plaintiff had failed to establish a prima facie case that (1) he was in the age group protected by the ADEA; (2) he was discharged or demoted; (3) at the time of his discharge or demotion, he was performing his job at a level that met his employer's legitimate expectations; and (4) following his discharge or demotion, he was replaced by someone of comparable qualifications outside the protected class.[41] The Court held that fourth element was not necessary for the prima facie case because the ADEA

> does not ban discrimination against employees because they are aged [forty] or older; it bans discrimination against employees because of their age, but limits the protected class to those who are [forty] or older. The fact that one person in the protected class has lost out to another person in the protected class is thus irrelevant, so long as he has lost out *because of his age*.[42]

Rather, the Court said the prima facie case requires "evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion."[43]

In the Tenth Circuit, most of the variety is found in the fourth element. The common articulations of the prima facie case usually include the same first three elements: plaintiff was in

---

*Medlock v. United Parcel Serv., Inc.*, 608 F.3d 1185, 1191 n.5 (10th Cir. 2010) (stating that the prima facie case is flexible and looks to "logically salient circumstances of each case that may raise the requisite inference of discrimination" but need not include that the plaintiff be replaced by a younger worker).

[40]517 U.S. 308, 309 (1996).

[41]*Id.* at 310.

[42]*Id.* at 312 (emphasis original).

[43]*Id.* (internal quotations and emphasis omitted).

the protected class; plaintiff was doing satisfactory work (or conversely plaintiff was qualified); and plaintiff suffered an adverse employment action.[44] The fourth element is sometimes that the adverse action took place under circumstances giving rise to an inference of discrimination;[45] sometimes that plaintiff was replaced by a younger employee;[46] and sometimes that he was treated less favorably than other similarly-situated employees outside the protected class.[47] The broadest of these variations is the "circumstances giving rise to an inference of discrimination" standard, as it may be satisfied by proof of a younger person replacing plaintiff or proof that plaintiff was treated less favorably than other similarly-situated workers.[48] Because of the flexibility inherent in the standard, any of the differing articulations may be appropriate "depending on the context of the claim and that nature of the adverse employment action alleged."[49] Regardless of the particular elements, the Court is mindful that they are "neither rigid nor mechanistic."[50] And, the purpose of a prima facie case is "establishment of an initial

---

[44]All three of these elements, however, are not always present. *See, e.g.*, *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 627 (10th Cir. 2012) (explaining that a prima facie case of age discrimination requires "(1) membership in a protected class and (2) an adverse employment action (3) that took place under circumstances giving rise to an inference of discrimination.").

[45]*Medlock v. United Parcel Serv., Inc.*, 608 F.3d 1185, 1191 n.5 (10th Cir. 2010).

[46]*Kosak v. Catholic Health Initiatives of Colo.*, 400 F. App'x 363, 366 (10th Cir. 2010).

[47]*Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1279 (10th Cir. 2010).

[48]*See, e.g.*, *Bittel v. Pfizer, Inc.*, 307 F. App'x 132, 138 (10th Cir. 2009) (finding that the plaintiff had met the burden of establishing circumstances giving rise to an inference of discrimination by evidence that he was treated more harshly than younger employees and that, after his discharge, younger employees assumed his duties).

[49]*Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 n.13 (1973)).

[50]*Velasquez v. Philips Elecs. N. Am. Corp.*, No. 13-1463-DDC-KMH, 2015 WL 505628, at *7 (D. Kan. Feb. 6, 2015) (citing *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1146 (10th Cir. 2008)) (internal quotations omitted).

inference of unlawful discrimination warranting a presumption of liability in plaintiff's favor."[51]

Here, the Court applies the prima facie case in its broadest formulation. Thus, the Plaintiff must show: (1) he was within the protected class; (2) he was doing satisfactory work; (3) he suffered an adverse employment action; and (4) it occurred under circumstances giving rise to an inference of discrimination. It is undisputed that Plaintiff is a member of the protected class (element one) and that he suffered an adverse employment action (element three). But, Plaintiff offers no evidence that he was doing a satisfactory job.[52] In fact, Defendant provides direct evidence to the contrary. For example, Defendant provides the affidavit of Stacey Masters in which she avows her personal knowledge of Plaintiff's chronic absenteeism, sleeping at work, and personal cellphone use.[53] Defendant further provides a photograph purporting to show Plaintiff sleeping.[54]

At this stage, all Defendant need do is point to the lack of evidence as to any element of the prima facie case. Although establishing a prima facie case may not be onerous, Plaintiff must substantiate his claims with evidence that would be admissible in the event of a trial. Because Plaintiff fails to provide any evidence that he was doing satisfactory work, the Court

---

[51]*Id.* (internal quotations omitted).

[52]Six photographs represent the sum total of evidence submitted by Plaintiff. *See* Doc. 18-1, Ex. A. The first two photographs are of a beer in a refrigerator and of a case of beer on a counter in what appears to be a lunch or break area. *Id.* at 2 & 3. The third and fourth photographs purport to show a young boy, allegedly a son of one of the other workers, in the warehouse and on the equipment. *Id.* at 4 & 5. Plaintiff states that TCBP has a notice posted in the warehouse that prohibits unauthorized persons on the premises. However, Plaintiff fails to provide evidence of this policy, therefore these allegations are unsupported. The fifth photograph shows a Hispanic-appearing male standing in what appears to be a kitchen area with a beer in his hand. The final photograph shows what appears to be a Caucasian male standing before a piece of equipment with his back to the camera and a cigarette in his hand. *Id.* at 6 & 7.

[53]Doc. 11-1, Ex. A ¶¶ 7–9.

[54]Doc. 11-4, Ex. D.

need not determine whether his dismissal occurred under circumstances giving rise to an inference of discrimination. Plaintiff has not established an inference of unlawful discrimination warranting a presumption of liability in his favor and, as such, has not established a prima facie case.[55] Summary judgment on Plaintiff's ADEA claim is granted.

### C. Racial Discrimination

A plaintiff may prove a violation of Title VII either by direct evidence of discrimination or by adhering to the burden-shifting framework of *McDonnell Douglas*.[56] Here, like Plaintiff's age discrimination claim, there is no direct evidence of racial discrimination, so Plaintiff's claim must be analyzed under *McDonnell Douglas*. To establish a prima facie case of race discrimination, Plaintiff must show that (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination.[57] Examples of circumstances that can give rise to an inference of discrimination include:

> [A]ctions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus . . . , preferential treatment given to employees outside the protected class. . . , in a corporate downsizing, the systematic transfer of a discharged

---

[55]The Court could have assumed without deciding that Plaintiff had established a prima facie case and moved on to a pretext analysis, as it does below for Plaintiff's racial discrimination claim. The Court declined to do so, because Plaintiff provides only conclusory allegations unsupported by evidence. Even if the Court had assumed the establishment of the prima facie case, as discussed more fully below, the evidence provided by Plaintiff fails to establish pretext.

[56]*Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011).

[57]Like with an age discrimination claim, a prima facie case for racial discrimination is flexible. *See EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800 & n.5 (10th Cir. 2007) (discussing how elements of a prima facie case in discrimination cases vary depending on context). In the Tenth Circuit, the prima facie case of racial discrimination no longer requires a "similarly-situated person" comparison. *Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1173 (10th Cir. 2005). While the third element may be shown by evidence that the employer treated similarly-situated employees more favorably, "such proof is just one sufficient means to do this and should not itself be mistaken as an indispensable element of the prima facie case." *Id.*

> employee's duties to other employees. . . , or a pattern of recommending the plaintiff for positions for which she is not qualified [or over-qualified] and failure to surface plaintiff's name for positions for which she is well-qualified. A plaintiff might also rely upon the fact that the defendant, following plaintiff's termination, continued to seek applicants to fill the position, . . . or, more generally, upon the time or sequence of events leading to plaintiff's termination.[58]

Here, the Court assumes without deciding that Plaintiff has met the non-onerous burden of establishing a prima facie case of racial discrimination.

The burden therefore moves to Defendant to articulate a nondiscriminatory purpose for the adverse employment action. Defendant has done so, stating that Plaintiff suffered from excessive absenteeism, was sleeping at work, was often using a personal cellphone, and after being warned about his cellphone usage, responded argumentatively. Any one of these alleged violations of TCBP's conduct policy could alone serve as a nondiscriminatory reason for his firing.

The burden thus returns to Plaintiff to show by a preponderance of the evidence that the nondiscriminatory reasons offered are merely pretext.[59] Plaintiff argues that he was given no written or oral warnings that his conduct would result in termination, and he argues that such conduct is not explicitly against company policy. He further contends that other employees broke the company standards of conduct, but kept their jobs. Because it is proper to construe Plaintiff's pleadings liberally, the Court will examine these arguments as though they are an attempt to show pretext. Evidence of pretext "may take a variety of forms" including:

---

[58]*Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005) (quoting *Chertkova Connecticut Gen. Life Ins.*, 92 F.3d 81, 91 (2d Cir. 1996)).

[59]*Luse v. Henderson*, 68 F. Supp. 2d 1217, 1224 (D. Kan. 1999) (citing *Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 558 (10th Cir. 1996)).

> (1) the defendant's stated reason for the action is false, (2) the defendant acted contrary to a written company policy prescribing the action to be taken under the circumstances; (3) the defendant has shifted rationales for the adverse employment action; or (4) the defendant has treated similarly situated employees who committed acts of comparable seriousness differently.[60]

Plaintiff seeks to show that Defendant's stated reasons for firing him are false by arguing that he received no warnings regarding his conduct. He states, "Defendant only contends that Plaintiff was caught sleeping, texting and talking on cell[]phone but does not provide any evidence that Plaintiff was warned through disclipnary [sic] steps such as oral warning, or written warning."[61] This mischaracterizes the evidence. Defendant provides an affidavit indicating that Plaintiff received oral warnings.[62] Regardless, the lack of warnings would not necessarily indicate that Defendant's proffered reasons for the adverse employment action are false. The burden here is on Plaintiff to provide evidence of such falsity. Here, Plaintiff fails to provide any evidence he was not chronically absent during the probationary period, that he did not sleep on the job, and that he did not frequently use a personal cellphone during work.

Furthermore, Plaintiff cannot show that Defendant acted contrary to a written company policy proscribing the action to be taken under the circumstances. He attempts to contend that sleeping, texting and talking on his cellphone are not against company policy. Again, this mischaracterizes the evidence. The policy in question states: "While *not intended to list all the*

---

[60]*Didier v. Abbott Labs.*, No. 14-3125, 2015 WL 4591931, at *7 (10th Cir. July 31, 2015) (citing *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000)); *see also Crowe.*, 649 F.3d at 1196 (stating that pretext may be shown by "providing direct evidence that the proffered rationale is false, or that the plaintiff was treated differently from similarly-situated employees.")

[61]Doc. 18 at 5. Although this argument appears under the heading "Age Discrimination," the Court liberally construes it as an effort to support both his age and race discrimination claims.

[62]Doc. 11-1, Ex. A ¶¶ 8 & 9.

*forms of behavior that are considered unacceptable* in the workplace, the following are examples of rule infractions or misconduct."[63] The policy also states that it prohibits "[u]nsatisfactory performance or conduct."[64] It would be unreasonable to think that sleeping on the job or spending too much time on a personal cellphone is anything other than "unsatisfactory performance or conduct." Likewise, Plaintiff's contention that he received no written or oral warnings does not show that Defendant acted contrary to a written policy, as the policy in question makes no mention of providing warnings, it merely states that infractions or misconduct "may result in disciplinary action, including termination of employment."[65]

Plaintiff's next contention—that other employees broke the standards of conduct, but remained employed—could be an argument that the Defendant treated Plaintiff differently than similarly situated employees who committed acts of comparable seriousness. In support of this argument, Plaintiff offers photographs that appear to depict a Hispanic male drinking alcohol and a Caucasian male smoking a cigarette while at work, both of which are against TCBP's standards of conduct.[66] Similarly situated employees are those who "deal with the same supervisor, are subjected to the same standards governing performance evaluation and discipline, and have engaged in conduct of comparable seriousness."[67] In making this determination "[a] court should also compare the relevant employment circumstances, such as work history and company

[63]Doc. 11-3, Ex. C (emphasis added).

[64]*Id.*

[65]*Id.*

[66]Doc. 18-1, Ex. A at 6 & 7. TCBP's standards of conduct prohibit working under the influence, possession of alcohol in the workplace, and smoking in the workplace. Doc. 11-3, Ex. C.

[67]*Hysten v. Burlington N. Santa Fe Ry. Co.*, 415 F. App'x 897, 907 (10th Cir. 2011) (unpublished) (quoting *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 801 (10th Cir. 2007)).

policies, applicable to the plaintiff and the intended comparable employees."[68]

Here, Plaintiff fails to provide evidence that the men in his photographic evidence were subject to the same standards governing performance and evaluation as Plaintiff. Plaintiff was a new hire, and the alleged conduct that resulted in his firing took place during a thirty-day probationary period. Plaintiff does not submit any evidence that the other employees who allegedly broke TCBP's standards of conduct were on a similar thirty-day probationary period. Because they were not subject to the same standards governing performance, they are not similarly situated. The Court therefore need not determine whether the conduct in question was of comparable seriousness.

In conclusion, without deciding whether Plaintiff has established a prima facie case, Plaintiff's racial discrimination claim nevertheless fails, as he has not met the burden under *McDonnell Douglas* of showing by a preponderance of the evidence that the proffered reasons for his firing were pretextual or unworthy of belief. Summary judgment as to Plaintiff's Title VII claim of racial discrimination claim is granted.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion for Summary Judgment (Doc. 10) is **granted**.

Dated: August 13, 2015

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

[68] *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997).